957 So.2d 825 (2007)
STATE of Louisiana
v.
Wayne DELAGARDELLE.
No. 06-KA-898.
Court of Appeal of Louisiana, Fifth Circuit.
April 11, 2007.
*827 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District, Parish of Jefferson, Terry M. Boudreaux, Juliet Clark, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Jane L. Beebe, Louisiana Appellate Project, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., WALTER J. ROTHSCHILD, and FREDERICKA HOMBERG WICKER.
WALTER J. ROTHSCHILD, Judge.
Defendant, Wayne Delagardelle, Jr., was charged by bill of information with aggravated burglary, a violation of LSA-R.S. 14:60.[1] At his arraignment, the defendant pled not guilty. Defendant waived his right to a jury trial and was tried in a bench trial where he was found guilty as charged. Defendant filed motions for new trial and for post-verdict judgment of acquittal, which were denied by the trial court.
The trial court sentenced the defendant to 15 years at hard labor with credit for time served. The State subsequently filed a multiple offender bill alleging that the defendant was a fourth felony offender. The State amended the bill to allege second felony offender status, and defendant admitted to the allegations in the multiple offender bill and waived his formal hearing. The trial court accepted the defendant's admission to being a second felony offender. The trial judge vacated the original sentence and sentenced the defendant to 20 years at hard labor without benefit of probation or suspension of sentence. Defendant filed a motion to reconsider sentence, which subsequently was denied. On the same day, the defendant filed a timely motion for appeal.
FACTS
Rosemary Turner McDonald testified that she was upstairs in her bedroom when she was alerted to someone breaking into her house in Jefferson Parish on December 4, 2004. When she went downstairs, she saw the defendant, whom she identified in court, outside kicking in her back door. After the defendant did not respond to her command to stop or she would call the police, McDonald ran out of her front door because she was scared. The defendant locked the front door behind her. She did not give the defendant permission *828 to enter her home. McDonald did not reenter her home until the police arrived.
Deputy Dave Jackson of the Jefferson Parish Sheriff's Office testified that he responded to a burglary call in Gretna on that date. He encountered McDonald running down the street screaming that someone was inside her house. Deputy Jackson was unable to enter the front door of the McDonald's residence because it was locked. When he went to the rear of the house, he saw the kitchen door was kicked open. Upon entering the house, he saw a single trail of muddy footprints that went through the kitchen, into the living room, and up the stairs. He followed the footprints upstairs to the master bedroom where he found the defendant looking at him from the closet. No one else was in the house. Deputy Jackson ordered the defendant out of the bedroom closet. While the defendant was in the closet, Deputy Jackson was unable to see the defendant's left hand. When the defendant refused to come out, Deputy Jackson grabbed the defendant's arm and pulled him out. After the defendant was subdued with a taser, Deputy Jackson noticed pills falling from the defendant's mouth. He opined that the defendant appeared to be on drugs. Later that same day, Deputy Jackson checked the closet where the defendant has hiding, and found a knife with a black "corrugated" handle and an open pill bottle with the victim's name on it on the floor. The victim's wallet was found on the defendant.
McDonald identified a photograph of her black handled knives that she kept on her kitchen counter top. She did not bring the knife belonging to her kitchen knife set upstairs and throw it into the closet. The knife also was not in her closet before she ran out of the house. The last time she saw the knife before this incident, it was in the knife block on the kitchen counter. McDonald admitted that she never saw the defendant in possession of the knife, because she ran. When the police returned the knife to her after the incident, she cleaned mud off it. She also cleaned muddy footprints off her carpeting. She identified photographs of her carpeting taken after the incident that showed the muddy footprints, not made by her, going up to the master bedroom. McDonald also identified several photographs of her bedroom and its closet in disarray that were not in that condition before she went downstairs on the day of the incident. The photograph of the closet depicted a prescription bottle and a knife. The prescription bottle was full and on her dresser before she went downstairs, not in the closet. When the prescription bottle was returned, the majority of the pills were gone, because they were on the floor or swallowed by the defendant, she opined. McDonald's son lives with her, but he was not home at the time.
DISCUSSION
On appeal, the defendant argues that the trial court erred in denying his motion for new trial alleging insufficient evidence. The defendant claimed that the State failed to prove that he had possession of the victim's knife that was found on the bedroom closet floor. The defendant notes that it is undisputed that McDonald's son also lived in the house. The defendant also contends that the motion for new trial should have been granted because the verdict is contrary to the law and the evidence, and it would serve the ends of justice.
The State argues that the trial court did not err in denying the defendant's motion for new trial, because the evidence presented was sufficient to support the defendant's conviction. The State claims that it proved that the defendant armed himself with a knife after entering McDonald's *829 residence to the exclusion of any reasonable hypothesis of the defendant's innocence. The State contends that the defense's suggestion that McDonald's son, who was not home, had placed the knife in the closet is not sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.
In the present case, the defendant filed a motion for new trial and a motion for post verdict judgment of acquittal. In both, the defendant alleged that the verdict was contrary to the law and the evidence, because there was insufficient evidence to support the conviction. At the motion hearing, as well as on appeal, the defendant alleged that there was no evidence presented to prove the aggravated element of the offense, i.e. that the defendant armed himself upon entering the house and had possession of the knife. The trial court denied defendant's motions after finding that the most reasonable explanation for how the knife got into the closet where the defendant was hiding was that the defendant brought it with him upstairs. The trial judge found that the State proved beyond a reasonable doubt that the defendant was armed at the time of his arrest. The trial court also noted that no evidence was presented to show that the defendant was so impaired that he did not know what he was doing.
"[A] motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded." LSA-C.Cr.P. art. 851. A trial court shall grant a new trial after a motion from the defendant when the verdict is contrary to the law and the evidence, or the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right. LSA-C.Cr.P. art. 851(1) and (5); State v. Condley, 04-1349 (La.App. 5 Cir. 5/31/05), 904 So.2d 881, 888, writ denied, 05-1760 (La.2/10/06), 924 So.2d 163. The decision on a motion for a new trial rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear showing of an abuse of discretion. State v. Quest, 00-205 (La.App. 5 Cir. 10/18/00), 772 So.2d 772, 784, writ denied, 00-3137 (La.11/2/01), 800 So.2d 866.
In the present case, the defendant suggests for the first time on appeal that a new trial would serve the ends of justice. As this argument was not raised in the trial court, it is not properly before this Court. In any case, LSA-C.Cr.P. art. 851(5) provides that a judgment on these grounds denying the motion is not reviewable by an appellate court. State v. Condley, 904 So.2d at 888-889, citing State v. Terrick, 03-515 (La.App. 5 Cir. 9/30/03), 857 So.2d 1153, 1161, writ denied, 03-3272 (La.3/26/04), 871 So.2d 346. An appellate court may review the grant or denial of the motion only for an error of law. LSA-C.Cr.P. art. 858; State v. Condley, 904 So.2d at 888-889. Therefore, the denial of the motion for new trial based upon serving the ends of justice would present nothing for this Court to review. State v. Condley, 904 So.2d at 888-889.
In addition, when a motion for new trial is based on the verdict being contrary to the law and the evidence, LSA-C.Cr.P. art. 851(1), there is nothing for review on appeal. State v. Condley, 904 So.2d at 888, citing State v. Lyles, 03-141 (La.App. 5 Cir. 9/16/03), 858 So.2d 35, 50. However, the Louisiana Supreme Court and this Court have addressed the constitutional issue of the sufficiency of the evidence under this circumstance. Id. Therefore, the denial of the defendant's motion for new trial based on the sufficiency of the *830 evidence is properly before this Court on review. State v. Condley, 904 So.2d at 889.
The standard of review for determining the sufficiency of evidence is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude the State proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Spears, 05-964 (La.4/4/06), 929 So.2d 1219, 1222. The evidence may be either direct or circumstantial. Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." LSA-R.S. 15:438. LSA-R.S. 15:438 does not establish a stricter standard of review than the more general rational juror's reasonable doubt formula; instead it serves as a helpful evidentiary guide for the jurors when evaluating circumstantial evidence. State v. Spears, 929 So.2d at 1222.
When evaluating circumstantial evidence, the trier of fact must consider the circumstantial evidence in light of the direct evidence, and vice versa, [and] the trier of fact must decide what reasonable inferences may be drawn from the circumstantial evidence, the manner in which competing inferences should be resolved, reconciled or compromised; and the weight and effect to be given to each permissible inference. From facts found from direct evidence and inferred from circumstantial evidence, the trier of fact should proceed, keeping in mind the relative strength and weakness of each inference and finding, to decide the ultimate question of whether this body of preliminary facts excludes every reasonable hypothesis of innocence.
Id., quoting State v. Chism, 436 So.2d 464, 469 (La.1983).
The trier of fact can accept or reject, in whole or in part, the testimony of any witness. State v. Baker, 01-1397 (La. App. 5 Cir. 4/30/02), 816 So.2d 363, 365. Constitutional law does not require the appellate court to determine whether it believes the witnesses or that the evidence establishes guilt beyond a reasonable doubt. State v. Spears, 929 So.2d at 1222. It is not the function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law. State v. Baker, 816 So.2d at 365; State v. Spears, 929 So.2d at 1222-1223. An appellate court does not determine whether another possible hypothesis suggested by the defendant could afford an exculpatory explanation of the events. State v. Williams, 05-59 (La.App. 5 Cir. 5/31/05), 904 So.2d 830, 833. The reviewing court is required to consider the whole record and determine whether any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Barnes, 98-932 (La. App. 5 Cir. 2/10/99), 729 So.2d 44, 46, writ denied, 99-1018 (La.9/17/99), 747 So.2d 1099.
In the present case, the defendant was convicted of aggravated burglary. "Aggravated burglary is the unauthorized entering of any inhabited dwelling . . . where a person is present, with the intent to commit a felony or any theft therein, if the offender, . . . [a]fter entering arms himself with a dangerous weapon." LSA-R.S. 14:60 and LSA-R.S. 14:60(2). A knife has been found to be a dangerous weapon. State v. Ellis, 672 So.2d at 1009; *831 State v. Pierre, 98-1123 (La.App. 5 Cir. 4/14/99), 733 So.2d 674, 677. The defendant must have the specific intent to commit either a felony or a theft at the time of his unauthorized entry. See, State v. Lefeure, 00-1142 (La.App. 5 Cir. 1/30/01), 778 So.2d 744, 752, writ denied, 01-1440 (La.9/21/01), 797 So.2d 669. "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." LSA-R.S. 14:10(1). Specific intent need not be proven as a fact, but may be inferred from the circumstances of the transaction and the actions of the defendant. State v. Hennis, 734 So.2d at 20; State v. Kirkland, 01-425 (La.App. 5 Cir. 9/25/01), 798 So.2d 263, 268, writ denied, 01-2967 (La.10/14/02), 827 So.2d 415. The determination of whether the defendant possessed the requisite intent in a criminal case is made by the trier of fact, and a review of the correctness of the determination is guided by the Jackson standard. State v. Kirkland, 798 So.2d at 268.
In the present case, defendant's sole argument is that the State did not prove that he armed himself with a dangerous weapon upon entering the victim's house, i.e. that he was in possession of the kitchen knife found in the upstairs bedroom closet where he hid. Since there was no direct evidence establishing that the defendant was armed with a dangerous weapon, the circumstantial evidence had to exclude every reasonable hypothesis of innocence, assuming every fact to be proved that the evidence tended to prove.
Deputy Jackson testified that after entering McDonald's house through the kitchen, he followed a single trail of muddy footprints that started in the kitchen and went through the house ending in the master bedroom upstairs. Deputy Jackson found the defendant hiding in the master bedroom closet with his left arm out of view. After Deputy Jackson forcibly removed the defendant from the closet, he found a knife on the closet floor. Deputy Jackson was informed by McDonald that her knives were kept at the kitchen door. McDonald testified that she did not bring the knife upstairs. Rather, her knives were always kept in the kitchen. Furthermore, she testified that the knife was not in her closet before she went downstairs. When the knife was returned to her, it had mud on it. She had seen the defendant outside kicking in the back door. As the trial judge noted, the most reasonable explanation for how the knife got into the closet where the defendant was hiding was that the defendant brought it with him upstairs. Therefore, we conclude that the State proved that the defendant armed himself with a dangerous weapon upon entering the victim's home.
In State v. Pierre, supra, this Court found sufficient evidence at trial to support a finding that the defendant either had the knife when he broke into the apartment or armed himself with the knife while in that apartment. State v. Pierre, 733 So.2d at 677. In that case, this Court noted that none of the witnesses testified that they saw the defendant grab a knife from kitchen. The testimony was undisputed that the defendant was not holding a knife when he encountered the occupant of the apartment, after he had kicked in the door. Id. Subsequently, the defendant was armed with a knife that was found, after his arrest, on the kitchen counter in the apartment of one of the other victims. Id.
Viewing the evidence in this case in the light most favorable to the State, we find that a rational trier of fact could have found that the State proved the essential element of aggravated burglary, i.e. that the defendant after entering armed himself *832 with a dangerous weapon, beyond a reasonable doubt under the Jackson standard. Therefore, we conclude that the trial court did not err in denying the defendant's motion for new trial based on the sufficiency of the evidence.
This assignment of error is without merit.
ERROR PATENT DISCUSSION
The defendant requests an error patent review, but has not briefed it. However, this Court routinely reviews the record for errors patent in accordance with LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990) regardless of whether defendant makes such a request. The review reveals several errors patent in this case. The following matters were discovered:
The original and habitual offender commitment/minute entries indicate that the defendant was informed of his Boykin[2] rights. However, the defendant was convicted in a bench trial. This Court has previously found that even though clerical errors in the commitment that do not cause prejudice to a defendant's rights do not merit reversal, the errors should be amended. State v. Quest, 772 So.2d at 788. Therefore, we remand the matter for correction of the original commitment/minute entry to reflect that the defendant was not informed of his Boykin rights upon entering a guilty plea, but rather was convicted in a bench trial. In addition, on remand the trial court is ordered to correct the habitual offender commitment/minute entry to reflect that the defendant was not informed of his Boykin rights upon entering a guilty plea, but rather was informed of his habitual offender rights before admitting to the allegations. State v. Bartley, 03-1382 (La.App. 5 Cir. 3/30/04), 871 So.2d 563, 575, writ denied, 04-1055 (La.10/1/04), 883 So.2d 1006.
We have also discovered that the original and habitual offender commitment/minute entries state that the State nolle prossed count two of the bill of information charging the defendant with "RECEIVING STOLEN THINGS $300 +." However, the bill of information indicates that the defendant was charged in count two with illegal possession of stolen things valued at between $300 and $500, a violation of LSA-R.S. 14:69. We remand the matter for correction of the original and multiple offender commitment/minute entries to reflect a correct description of the charged contained in the bill of information. See, State v. Terrase, 02-1009 (La. App. 5 Cir. 2/25/03), 841 So.2d 947, 951.
Finally, a review of the multiple offender sentencing transcript reveals that at the sentencing hearing, the trial court informed the defendant that he had five days to file post conviction relief. However, the commitment/minute entry reflects that the trial court informed the defendant that he had two years after the judgment of conviction and sentence has become final to seek post conviction relief. When there is a discrepancy between the minutes and the transcript, the transcript must prevail. State v. Lynch, 441 So.2d 732 (La.1983). LSA-C.Cr.P. art. 930.8 states that a defendant has two years after his judgment of conviction and sentence has become final to file for post conviction relief. Therefore, we remand the case to the trial court with an order to inform the defendant of the provisions of LSA-C.Cr.P. art. 930.8 by sending appropriate written notice to the defendant after the rendition of this Court's opinion and to file written proof that defendant received the notice in the record. State v. Hutchinson, *833 02-60 (La.App. 5 Cir. 5/15/02), 817 So.2d 500, 509.
CONVICTION AND SENTENCE AFFIRMED; CASE REMANDED WITH INSTRUCTIONS.
NOTES
[1] Defendant was charged in a second count of this bill of information with illegal possession of stolen things valued at between $300 and $500, a violation of LSA-R.S. 14:69, but this charge was severed and subsequently nolle prossed by the State.
[2] Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).